IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

WARD KIDDER,

     Plaintiff,

v.                                                     Case No. 13-CV-391 KG/CEG

INTEL CORPORATION,

     Defendant.

<u>MEMORANDUM OPINION AND ORDER</u>

     This matter comes before the Court on Defendant's Motion for Summary Judgment and Supporting Memorandum Brief (Motion for Summary Judgment), filed May 1, 2014.  (Doc. 45). Plaintiff filed a response, and Defendant filed a reply.  (Docs. 54, 55).  After the Court reviewed Defendant's reply, the Court *sua sponte* permitted Plaintiff to file a surreply addressing whether Abad Valdez's statements to Plaintiff fall within an exception to the hearsay rule.  (Doc. 58). Plaintiff subsequently filed a surreply.  (Doc. 67).  Having considered Defendant's Motion for Summary Judgment, the corresponding briefs, and the evidence of record, the Court denies Defendant's Motion for Summary Judgment.

*I. Background*

     *A. Plaintiff's Complaint for Damages (Complaint)*

     This personal injury lawsuit arises out of allegations that Defendant exposed Plaintiff to lead while Plaintiff worked for Defendant between January 2007 and December 2008.  On February 1, 2013, Plaintiff filed his Complaint in Second Judicial District Court, County of Bernalillo, State of New Mexico.  (Doc. 1).  Defendant subsequently removed the case to this Court based on diversity jurisdiction.  *Id.*

Plaintiff's Complaint contains a single count alleging intentional or reckless conduct resulting in personal injury.  *Id.* at 7-8.  Plaintiff alleges that Defendant (1) "engaged in an intentional act or omission, without just cause or excuse, that was reasonably expected to result in the injury suffered by Plaintiff;" (2) "knew or should have known the injury would occur, or utterly disregarded the consequences of its intentional act or omission;" and (3) proximately caused Plaintiffs injuries.  (Doc. 1) at 7.  Plaintiff seeks compensatory damages for lost earnings, personal injuries, pain and suffering, and loss of enjoyment of life; and punitive damages for Defendant's alleged wanton and reckless conduct.  *Id.* at 8.

   *B. Defendant's Motion for Summary Judgment (Doc. 45)*

Defendant moves for summary judgment on Plaintiff's claim based on the exclusivity provision of the New Mexico Worker's Compensation Act (NMWCA).[1]  Defendant contends that Plaintiff cannot circumvent the NMWCA because he cannot establish the elements of a *Delgado*[2] claim against Defendant.  A *Delgado* claim, as explained below, allows a plaintiff to bypass the NMWCA's exclusivity provision if the plaintiff meets a three-part test.  Defendant submits that the evidence establishes that (1) Defendant did not know about Plaintiff's alleged exposure to lead while working for Defendant; (2) Defendant did not instruct Plaintiff to work in

---

[1] *See* NMSA 1978, § 52-1-9 (Repl. Pamp. 2003), which provides that:

   The right to the compensation provided for in this act, in lieu of any other liability whatsoever, to any and all persons whomsoever, for any personal injury accidentally sustained or death resulting therefrom, shall obtain in all cases where the following conditions occur:

   A. at the time of the accident, the employer has complied with the provisions thereof regarding insurance;
   B. at the time of the accident, the employee is performing service arising out of and in the course of his employment; and
   C. the injury or death is proximately caused by accident arising out of and in the course of his employment and is not intentionally self-inflicted.

[2] *Delgado v. Phelps Dodge Chino, Inc.*, 2001-NMSC-034, 131 N.M. 272.

an area knowing that he was being or would be exposed to lead; (3) Defendant did not engaged in an intentional act or omission, either objectively or subjectively, that was expected to cause injury or harm to Plaintiff; and (4) Defendant's intentional acts or omissions did not proximately cause Plaintiff's alleged injuries.  As such, Defendant argues that the NMWCA precludes Plaintiff's claim from being filed in district court.

   *C. Summary of Undisputed Material Facts*

   Defendant employed Plaintiff as an equipment technician between August 1993 and January 2012.  (Doc. 45) at 14 (depo. at 14).  Between January 2007 and December 2008, Plaintiff served as an equipment technician for the Axcelis tool set in the CF4 area of Defendant's plant in Rio Rancho, New Mexico.  *Id.* at 15 (depo. at 45-47).  Plaintiff's job included cleaning parts of the Axcelis tool set.  (Doc. 54-1) at 3 (depo. 60-63).  Specifically, Plaintiff cleaned Axcelis tool set's "baffle plates" by removing the baffle plates and cleaning tiny holes in them by spraying isopropyl alcohol.  (Doc. 54-1) at 3 (depo. at 61).  Plaintiff explains that to properly clean the baffle plates, an equipment technician should submerse the baffle plate in a sink with ultrasonic water.  *Id.*  However, Defendant did not provide Plaintiff a sink to clean the baffle plates.  *Id.*

   During his time cleaning the baffle plates, roughly twenty-four months, Plaintiff claims that he was continuously exposed to lead.  *Id.* at 44-35 (depo. at 45-47, 68).  Plaintiff states that he was exposed to lead "[f]rom touching the chamber and contaminated – or parts that had ash residue on your fingers and transferring them to your face, lips, mouth."  (Doc. 54-1) at 2. (depo. at 60).  Sometime between November 21, 2008, and January 15, 2009, Defendant discontinued use of the Axcelis tool set in their Rio Rancho plant.  (Doc. 54-1) at 6 (depo. at 82-84).

In response to Plaintiff's allegations of lead exposure, Defendants hired an "Industrial Hygiene" group "to characterize the potential for exposure to [l]ead [of] an employee working in the [CF4] area between January 2007 and November 2008." (Doc. 45) at 20. On March 11, 2010, the Industrial Hygiene group produced a report concluding that:

> [t]he environmental controls as well as engineering and administrative controls (cleaning procedures, preventative maintenance requirements, etc.) in the manufacturing environment make the risk of exposure to lead in the C4 area or while working on the ASH tool "trivial" or unlikely based on Qualitative Risk Assessments performed by Certified Industrial Hygiene professionals.

*Id.* at 21. Under the heading "Assessment Summary," the report notes that the assessment was revised on June 28, 2002, and on March 10, 2008. (Doc. 45) at 26. The report does not state where the Industrial Hygiene group conducted the assessment or whether the Industrial Hygiene group conducted the assessment on the Axcelis tool set that Plaintiff cleaned.[3]

Plaintiff states that, between January 2007 and the end of 2008, Defendant knew he was being exposed to lead. (Doc. 54-1) at 4 (depo. at 68). In May 2010, Plaintiff was walking with Abad Valdez, an Axcelis tool set engineer at Defendant's Rio Rancho plant, and discussing that Plaintiff was ill. *Id.* Mr. Valdez told Plaintiff, "We should have had you wear a [*sic*] OSHA mask to protect you from the lead." *Id.* Plaintiff responded, "There's lead in those tools." *Id.* Mr. Valdez replied, "Yeah," and proceeded to turn down the hall and entered the elevator. *Id.* Mr. Valdez was unwilling to speak about that topic again with Plaintiff. *Id.*

In early 2010, Plaintiff noticed graying in his gums. (Doc. 54-1) at 6 (depo. at 81). In February 2010, Plaintiff saw Jan Jay, DOM, a certified toxicologist, and showed her the graying of his gum line. (Doc. 54-1) at 8 (depo. at 89-90). In response, Dr. Jay ran an analysis on

---

[3] According to Christine Dullea, one of the industrial hygienists told her that the Industrial Hygiene group conducted their report based, in part, on a different Axcelis tool set located at a separate facility. (Doc. 54-2) at 2. It is unclear from the evidence who is Ms. Dullea.

Plaintiff's urine for toxic metals, revealing an elevated level of lead in Plaintiff's body.  (doc. 54-3).  Dr. Jay told Plaintiff that he had "really high" levels of lead in his body.  *Id.* (depo. at 89 - 90).  As a result of his alleged exposure to lead, Plaintiff claims to suffer from pain in his joints, memory issues, behavioral issues, pulmonary embolus, and avascular necrosis.  (Doc. 54-1) at 10 (depo. at 96-97).

## II. Standard of Review

Summary judgment is appropriate if there is no genuine dispute as to a material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a).  When applying this standard, the Court examines the factual record and reasonable inferences therefrom in the light most favorable to the party opposing summary judgment. *Applied Genetics Intl, Inc. v. First Affiliated Sec., Inc.*, 912 F.2d 1238, 1241 (10th Cir. 1990).  The moving party bears the initial burden of showing the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).  Only then does the burden shift to the non-movant to come forward with evidence showing that there is a genuine issue of material fact.  *Bacchus Indus., Inc. v. Arvin Indus., Inc.*, 939 F.2d 887, 891 (10th Cir. 1991).  An issue of material fact is genuine if a reasonable jury could return a verdict for the non-movant.  *Kaul v. Stephan*, 83 F.3d 1208, 1212 (10th Cir.1996) (citation omitted).  The non-moving party may not avoid summary judgment by resting upon the mere allegations or denials of his or her pleadings. *Bacchus Indus., Inc.*, 939 F.2d at 891.

## III. Discussion

### A.   Whether Plaintiff's testimony about Valdez's statements are inadmissible hearsay

Plaintiff does not provide deposition testimony from Valdez regarding the May 2010, conversation between Plaintiff and Valdez.  Rather, Plaintiff recalls the conversation in his own

deposition and heavily relies in his responsive pleading on his testimony regarding the conversation.  Defendant argues that Plaintiff's testimony about Valdez's statements is inadmissible under the hearsay rule.  The Court, therefore, will first decide whether this evidence is admissible.

The Federal Rules of Evidence define hearsay as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted."  Fed. R. Evid. 801(c).  Hearsay evidence is generally not admissible.  Fed. R. Evid. 802.  Plaintiff asserts that the testimony should be admitted as nonhearsay admissions of a party opponent under Fed. R. Evid. 801(d)(2)(D).

Rule 801(d)(2)(D) provides, in pertinent part, that a statement is not hearsay if "[t]he statement is offered against an opposing party and … was made by the party's agent or employee on a matter within the scope of that relationship and while it existed."  For a statement to be admissible under Rule 801(d)(2)(D), the offering party must meet a three-part test: (1) "[t]he party must establish the existence of the employment relationship independent of the declarant's statement offered as evidence;" "[t]he statement must be made during the existence of the declarant's 'agency or employment;'" and "[t]he statement must concern a matter within the scope of declarant's employment."  *Boren*, 887 F.2d 1038.  "The decision to admit or exclude evidence is within the sound discretion of the district court, and, on appeal, reviewable only for an abuse of discretion."  *Boren v. Sable*, 887 F.2d 1032, 1033 (10th Cir. 1989).

Two cases help to illustrate whether an employee made a statement during the "scope of employment:" *Rainbow Travel Service v. Hilton Hotels Corp.*, 896 F.2d 1233 (10th Cir.1990), and *Jaramillo v. Colo. Judicial Dep't*, 427 F.3d 1303 (10th Cir.2005).  In *Rainbow Travel Service*, the plaintiff was a travel service that had arranged for clients to stay at a certain hotel in

Miami.  896 F.2d at 1236.  It sued the hotel chain owning the hotel for breach of contract and fraud when the hotel was overbooked and the chain had to accommodate the clients at a less desirable hotel.  *Id.*  The Tenth Circuit upheld the district court's ruling to admit testimony of the plaintiff's clients who recited statements made by a shuttle bus driver employed by the hotel to shuttle customers from the desirable hotel to the less desirable hotel.  *Id.* at 1242.  The driver told the customers his job was to transport guests that the hotel chain had bumped from the desirable hotel and to try to keep the guests happy causing the plaintiff to conclude that the hotel frequently bumped customers.  *Id.*  The district court ruled the testimony was admissible under Rule 801(d)(2)(D) "because it was a statement by a party's agent concerning a matter within the scope of his agency."  *Id.*  The Tenth Circuit upheld the admission, noting that the statements were "all related to the scope of his employment with the hotel."  *Id.*

In contrast, in *Jaramillo*, an employee sued her employer and sought to admit a co-employee's statements that the employer promised the plaintiff a job promotion.  427 F.3d at 1313-14.  The Tenth Circuit held that the statement did not qualify as an admission of a party opponent because the speaker "must be involved in the decisionmaking process affecting the employment action involved."  *Id.* at 1314. (citation omitted).  The co-employee "was not involved in the hiring or promotion process.  His alleged statements were therefore outside the scope of his employment and not admissible as statements of a party opponent."  *Id.*

In the present case, Plaintiff satisfies the Rule 801(d)(2)(D) three-part test.  First, it is undisputed that Defendant employed Valdez as an engineer on the Axcelis tool set.  Second, neither party disputes that the conversation between Plaintiff and Valdez occurred while Valdez was employed by Defendant.  Finally, the statements by Valdez concerned a matter within the scope of his employment by Defendant.  Valdez's statements related to the chemicals used in the

operation of the Axcelis tool set.  Based on the foregoing, the Court can reasonably infer that Valdez, as an engineer, was in a position to and did know how the Axcelis tool set operated. This is similar to the shuttle driver in *Rainbow Travel Service* who made admissible statements related to his task of shuttling customers and keeping them happy.  In contrast, there is nothing to indicate that Valdez, as an Axcelis tool set engineer, was not involved in the aspect of work in which he commented on, unlike the co-worker in *Jaramillo*.  Therefore, because Plaintiff meets the three- part test for admission of Valdez's statements as an admission of a party opponent, Valdez's statements are non-hearsay and admissible evidence.

   B.   *Whether Plaintiff properly filed his suit in district court*

   Ordinarily, when employees suffer accidents arising from the negligence of their employers, compensation for the injuries falls within the exclusive domain of the NMWCA. *Delgado v. Phelps Dodge Chino, Inc.*, 2001-NMSC-034, ¶ 12, 131 N.M. 272.  However, in *Delgado*, the New Mexico Supreme Court held that the exclusivity provision of the NMWCA does not apply to intentional or willful injuries committed by the employer.  *Id.* ¶ 24 ("We hold that when an employer intentionally inflicts or willfully causes a worker to suffer an injury that would otherwise be exclusively compensable under the [NMWCA], that employer may not enjoy the benefits of exclusivity, and the injured worker may sue in tort.").

   The New Mexico Supreme Court articulated a three-pronged test to determine whether an employer has acted willfully.  *Id.* ¶ 26.  Willfulness renders a worker's injury nonaccidental and therefore outside the scope of the NMWCA when (i) the employer engages in an intentional act or omission without just cause or excuse, that is reasonably expected to result in the injury suffered by the worker; (ii) the employer expects the intentional act or omission to result in the

injury, or has utterly disregarded the consequences of its actions; and (iii) the intentional act or omission proximately causes the injury.  *Id.*

> 1. *Whether Defendant engaged in an intentional act or omission without just cause or excuse, that is reasonably expected to result in the injury suffered by Plaintiff*

The first prong is an objective inquiry into "whether a reasonable person would expect the injury suffered by the worker to flow from the intentional act or omission."  *Id.* ¶ 12.  The *Delgado* court clearly defined this first prong as requiring general foreseeability.  *Id.*  "The critical measure … is whether the employer has, in a specific dangerous circumstance, required the employee to perform a task where the employer is or should clearly be aware that there is a substantial likelihood the employee will suffer injury or death performing the task."  *Dominguez v. Perovich Properties, Inc.*, 2005-NMCA-050, ¶ 21, 137 N.M. 401.

In *Delgado*, the New Mexico Supreme Court held that the estate of an employee met the first prong.  2001-NMSC-034, ¶ 12.  The employee there died while working at a smelting plant that distilled copper ore by heating rock to separate the ore from the worthless slag.  *Id.* ¶ 3.  The molten slag collected into a cauldron.  *Id.*  Plant workers would routinely empty the cauldron by using a "mudgun" to stop the flow of slag and a specially designed truck, called a "kress-haul," to remove the cauldron for emptying.  *Id.*

On the night that the employee died, the smelting plant pressured a shorthanded work crew to work harder to recoup losses from a recent shutdown.  *Id.* ¶ 4.  As a result, the molten slag cauldron filled at an unusually fast pace and needed to be emptied, but the mudgun was not working.  *Id.*  The employee's supervisors chose not to shut down the furnace to allow the employee to safely empty the cauldron.  *Id.*  Rather, the supervisors ordered the employee to remove the cauldron of molten slag using the kress-haul alone, despite molten slag continuing to

accumulate and spill over the side of the cauldron.  *Id.* The employee requested help twice, explaining that he was neither qualified nor able to perform the removal task.  *Id.* ¶ 5.  Both times, his supervisors denied the requests and insisted that he perform the dangerous operation. *Id.*  As a result, the employee became "fully engulfed in flames," sustained third-degree burns all over his body, and eventually died from his injuries.  *Id.*  The *Delgado* court stated that, in sending the employee to empty the cauldron without shutting down the furnace, the employer "knew or should have known that [the employee] would die or suffer great bodily harm."  *Id.* ¶ 4.

In contrast, in *Cordova v. Peavey Co.*, the United States District Court found that a temporary employee did not present adequate evidence that his employer should have reasonably anticipated that its actions would lead to his injury.  273 F.Supp.2d 1213, 1219 (D.N.M.2003) *aff'd*, 111 F. App'x 992 (10th Cir. 2004).  The temporary employee reached into an auger to clean out grain, and the auger caught his hand when another worker began to operate it.  *Id.* at 1216. The temporary employee lost his arm from the accident.  *Id.*  At the time of the accident, there was no guard on the auger, no lock-out/tag-out procedures to prevent the auger from being engaged, and the employer provided neither worker with any training with regard to the operation or maintenance of the auger.  *Id.*

The *Cordova* court found that the employer's assignment of certain tasks to the temporary employee was not reasonably expected to result in the loss of his arm.  *Id.* at 1219. The temporary employee was "stretching the concept of foreseeability too far to say that [the other worker's] engagement of the auger at the same time that [the temporary employee] stuck his arm in the auger was somehow foreseeable."  *Id.*  Unlike the employee in *Delgado*, the temporary employee was not instructed to perform a dangerous act and the temporary employee knew that his act was a dangerous thing to do.  *Id.*

Additionally, in *Dominguez*, the New Mexico Court of Appeals upheld a district court's grant of summary judgment dismissing an employee's *Delgado* claim.  2005-NMCA-050, ¶ 1. The employee worked at a gravel processing operation which used a front-end loader to process and separate raw gravel through screening equipment.  *Id.* ¶ 2.  From time to time, the screening equipment had to be cleaned and the equipment's screen had to be changed.  *Id.* On the day that the employee was injured, the employee's supervisor asked the employee to clear rocks that were jammed in one of the screens.  *Id.* ¶ 3.  The screening equipment was stopped and the employee climbed onto a conveyor belt that fed the gravel into the machinery.  *Id.* ¶ 3.  While on the conveyer belt, the employee signaled to his supervisor.  *Id.* ¶ 4.  The supervisor misinterpreted the hand gestures as a signal that the screen was cleared.  The supervisor restarted the conveyer belt.  *Id.*  The employee was carried down the conveyor belt and injured.  *Id.*

The employee sued the employer arguing the employer's gravel pit and rock crushing operations were run in an intentionally and willfully dangerous, reckless, and unsafe way with total disregard for safety and licensing requirements.  *Id.* ¶ 5.  To support this contention, the employee showed, among other things, that the employer: had no mandatory manual lock-out devices for the machinery to lock the conveyor belt a person was on it; did not report the accident as required by law; did not have a mining permit for the gravel pit where the accident occurred; avoided mine safety inspections by not obtaining a permit; took affirmative action to prevent inspectors from finding mine safety violations; and never held safety meetings or gave instructions as required by law.  *Id.* ¶ 8.  Despite the abovementioned violations or omissions by the employer, the *Dominguez* court held that the employee showed "no inherent probability of injury, nor modicum of intent on [the employer's] part to send [the employee] into harm's way." ¶ 21.  Furthermore, the *Dominguez* court stated that although the employer "may have

intentionally failed to provide safety devices it knew or is claimed to have known that it was required to provide, the disregard does not reach the standard contemplated under the second prong of the Delgado test." *Id.* ¶ 21.

Viewed in the light most favorable to Plaintiff, the evidence shows that Defendant employed Plaintiff as an equipment technician between January 2007 and December 2008. Defendant required Plaintiff to clean parts of the Axcelis tool set by removing the tool's baffle plates and cleaning their holes by spraying isopropyl alcohol to remove particles. However, other cleaning techniques existed that could have limited Plaintiff's exposure to lead. Valdez, Defendant's engineer, was aware that the cleaning technique used by Plaintiff exposed Plaintiff to lead. A reasonable jury could conclude from these facts that Defendant required Plaintiff to work for nearly twenty-four months while being exposed to lead. Furthermore, a reasonable jury could conclude from Defendant's Axcelis tool set engineer's statements that Defendant was or should have been aware that there was a substantial likelihood that Plaintiff would suffer injury from being exposed to lead for a prolonged time. Finally, Defendant does not provide the Court with any evidence that Defendant was not aware or should not have been aware that it exposed Defendant to lead. Therefore, in light of Valdez's statements, Defendant fails to carry its burden of showing the absence of a genuine issue of material fact.

Plaintiff's case is more similar to the situation discussed in *Delgado* than it is to *Cordova* or *Dominguez.* *Cordova* and *Dominguez* involved employees being injured in unexpected and unlikely accidents and, therefore, the employer did not submit the employee to a work environment that was reasonably expected to result in injury. In contrast, the employer in *Delgado* required the employee to perform an unsafe task that was likely to cause the employee severe injury. In this case, Defendant required that Plaintiff work for nearly twenty-four months

cleaning tools that exposed him to lead.  The cleaning process exposing Plaintiff to lead for such

a lengthy period and then Plaintiff becoming ill is unlike the unforeseen and unexpected

accidents in *Cordova* or *Dominguez* and more like the fairly certain injury that occurred in

*Delgado*.  Therefore, viewed in the light most favorable to Plaintiff, Plaintiff has put forth

evidence that raises a genuine issue of material fact regarding whether Defendant engaged in an

intentional act or omission without just cause or excuse, that is reasonably expected to result in

the injury suffered by Plaintiff.  Therefore, Defendant is not entitled to summary judgment based

on the first prong of the *Delgado* test.

> ### 2.  *Whether Defendant expected the intentional act or omission to result in the injury, or utterly disregarded the consequences*

The second prong requires an examination of the subjective intent of the employer.

*Delgado*, 2001-NMSC-034, ¶ 28.  If the employer decided to engage in the act or omission

without considering its consequences, the second prong is satisfied.  *Id.*  If, however, the

employer did consider the consequences, the second prong will be satisfied only if the employer

expected the injury to occur.  *Id.*  It is not enough to prove that the employer "considered the

consequences and negligently failed to expect the worker's injury to be among them."  *Id.*

Viewed in the light most favorable to Plaintiff, the evidence shows that Valdez,

Defendant's engineer, knew that Plaintiff should have worn a safety mask because Valdez was

aware of the risk of lead exposure while cleaning the Axcelis tool set.  A reasonable jury could

conclude from this fact that Defendant expected Plaintiff's exposure to lead to injure him.

Alternatively, a reasonable jury could conclude that, if Defendant did not expect Plaintiff's

injury, it utterly disregarded the consequences by requiring Plaintiff to clean the Axcelis tool set

without proper equipment or safety gear.  Plaintiff, therefore, has put forth evidence that raises a

genuine issue of material fact regarding whether Defendant expected their intentional act or

omission to result in Plaintiff's injury or whether Defendant utterly disregarded the consequences.  Consequently, Defendant is not entitled to summary judgment based on the second prong of the *Delgado* test.

> 3.  *Whether Defendant's intentional act or omission proximately causes Plaintiff's injury*

The third prong is a standard proximate cause requirement.  *Id.* at ¶ 29.  Defendant contends that Plaintiff cannot show that he was exposed to lead which caused his injuries. Plaintiff counters by arguing that he was exposed to high levels of lead, and his symptoms are directly related to lead poisoning.

Viewed in the light most favorable to Plaintiff, the evidence shows that Plaintiff was exposed to lead while cleaning tools for roughly twenty-four months.  Although the Industrial Hygiene group reported that the risk of exposure to lead was trivial or unlikely, it is unclear whether the Industrial Hygiene group: conducted the assessment at the Rio Ranch plant; conducted the assessment on the Axcelis tool set that Plaintiff cleaned; conducted the assessment at the time Plaintiff alleges lead exposure; or assessed the potential exposure to lead to an employee spraying the baffle plates with isopropyl alcohol.  After being exposed to lead, Plaintiff became ill and saw a doctor.  The doctor tested Plaintiff and discovered high levels of lead in Plaintiff's urine and told Plaintiff that he had "really high" levels of lead in his body.

Based on this evidence, a reasonable jury could conclude that cleaning tools for Defendant exposed him to lead and proximately caused him to suffer from lead poisoning. Plaintiff, therefore, has put forth evidence that raises a genuine issue of material fact regarding whether Defendant's intentional act or omission proximately caused Plaintiff's injury, and Defendants are not entitled to summary judgment based on the third prong of the *Delgado* test.

In sum, Plaintiff presents facts sufficient to raise a genuine issue of material fact for each of the three-prongs of the *Delgado* test.  Therefore, the Court denies Defendant's Motion for Summary Judgment.

IT IS ORDERED that Defendant's Motion for Summary Judgment (Doc. 45) is denied.

_____
UNITED STATES DISTRICT JUDGE